**FILED - GR**
March 25, 2014 2:23 PM
TRACEY CORDES, CLERK
U.S DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY _mkc / _____    SCANNED BY _____

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

Eric P. Wendlandt,                        :

6699 Avonlea Court SE              :          Case  No.:

Grand Rapids, Michigan  49546  :

        Plaintiff

vs.

Bank of America, N.A.
400 National Way
Simi Valley, California  93065

and

Brian T. Moynihan
Catherine P. Bessant
David C. Darnell
Christine P. Katziff
Terry P. Laughlin
Gary G. Lynch
Thomas K. Montag
Ron D. Sturzenegger
Bruce R. Thompson
100 N. Tryon Street
Charlotte, North Carolina  28255

and

Charles O. Holiday, Jr.
Sharon L. Allen

**1:14-cv-313**

**Janet T. Neff**
**U.S. District Judge**

Susan S. Bies
Jack O. Bovender, Jr.
Frank P. Brambie, Sr.
Pierre de Weck
Arnold W. Donald
Charles K. Gifford
Linda P. Hudson
Monica C. Lozano
Thomas J. May
Brian T. Moynihan
Lionel L Nowell, III
Clayton Rose
R. David Yost
400 National Way
Simi Valley, California  93065

and

MERSCORP Holdings, Inc.
MERS (Its Succeossors and / or Assigns)
1818 Library Street
Suite 300
Reston, Virginia  20190

and

Bill Beckman
Michael Dawson
Kathy Gray
Josh Kardon
Michelle L. Korsmo
Brian McCrakin
Kevin Race
Christine Ready
David H. Stevens

Lawrence P. Washington
1818 Library Street
Reston, Virginia  20190

and

Trott & Trott
31440 Northwestern Highway
Suite 200
Farmington Hills, Michigan  48334

and

Bank of New York Mellon
One Wall Street
New York, New York  10286

and

Ruth E. Burch
Nicholas M. Donofrio
Gerald L. Hassell
Edmund F. "Ted" Kelly
Richard J. Kogan
Michael J. Kowalski
John A. Luke, Jr.
Mark A. Nordenberg
Catherine A. Rein
William C. Richardson
Samuel C. Scott III
Wesley W. von Schack
One Wall Street
New York, New York  10286

and

Curtis Y. Arledge
Richard Brueckner
Art Certosimo
Michael Cole-Fontayn
Thomas P. (Todd) Gibbons
Mitchell E. Harris
Gerald L. Hassell
Timothy F. Keaney
Suresh Kumar
Stephen D. Lackey
Karen B. Peters
Brian B. Rogan
Brian T. Shea
Jane Sherburne
Kurt D. Woetzel
One Wall Street
New York, New York  10286

and

Ruth E. Burch
Edmund F. "Ted" Kelly
John A. Luke, Jr.
William C. Richardson
c/o The Bank of New York Mellon
Church Street Station
P.O. Box 2164
New York, New York  10008-2164

and

Blank & Rome, LLP and Jonathon Moore (Blank & Rome, LLP)
One Logan Square
130 North 18th Street

Philadelphia, Pennsylvania  19103-6998

and

Fabrizio & Brook, P.C. & Jonathan L. Engman & Frances Lee
City Center Building
888 West Big Beaver
Suite 800
Troy, Michigan  48084

        DEFENDANDTS

## COMPLAINT

Jurisdiction and Venue:

The matter at issue involves parties who exist and / or live in different states. In addition, the subject matter pertains to violations by the defendants of laws of the United States of America. This includes but is not limited to the federal Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. (hereafter sometimes referred to as "FDCPA"), TILA, the Real Estate Settlement Procedures Act, 12 U.S.C. §2602 et seq., (hereafter sometimes referred to as "RESPA") and relevant portions of 15 U.S.C. §1602 et seq., 15 U.S.C. §1640, et seq., 24 CFR §203.604 and without limitation to any and all other relevant portions of applicable laws whether or not specifically mentioned herein. The amounts in question exceed the jurisdictional minimums of this court. This matter involves federal statutes, federal questions and controversies and questions of federal constitutional rights and laws; and, substantive federal rights.

Parties:

The plaintiff's domicile is in the State of Michigan. The defendants domicile includes various states in the United States of America.

General Allegations and Operative Facts:

1.  Plaintiff, Eric Paul Wendlandt, herein referred to interchangeably as plaintiff or Wendlandt is the occupier of property located in the state of Michigan and commonly referred to as 6699 Avonlea Court SE, Grand Rapids, Michigan 49546 at all relevant times including in and after April 2007. The alleged amount being demanded by some of the defendants from the plaintiff and others is in excess of $526,000.00 US (Five Hundred Twenty Six Thousand United States Dollars).

2.   There was a mortgage recorded by the Kent County Register of Deeds Office to the benefit of and in favor of Mortgage Electronic Registration Systems, Inc. (hereafter referred to interchangeably and from time to time as 'MERS'), even though MERS did not provide any financial consideration whatsoever in any form to the Plaintiff.  MERS was merely named as a 'Nominee'.

3.   Plaintiff states that there are genuine questions as to the authenticity of the purported note-like copies of documents which may or may not be held by some of the defendants.    It is impossible for the Plaintiff to address these genuine questions of authenticity regarding the purported, alleged Note as the relevant Defendants have failed, refused and neglected to allow anyone to resolve these genuine questions of authenticity.

4.   Plaintiff states that there are genuine questions as to the authenticity of the purported mortgage-like copies of documents which may or may not be held by some of the defendants.  It is impossible for the Plaintiff to address these genuine questions of authenticity regarding the purported, alleged Mortgage as the relevant Defendants have failed, refused and neglected to allow anyone to resolve these genuine questions of authenticity.

5.   The Plaintiff used the property commonly referred to and known as 6699 Avonlea Court SE, Grand Rapids, Michigan 49546 as his primary residence and / or domicile at all relevant times to the present.

6.   Defendants have created an environment  which has made it impossible for the Plaintiff to determine with any specificity the veracity of some of the defendants' demands. For example, some of the relevant defendants, and through their respective officers, directors, agents and / or assigns have had an opportunity to respond and rectify Plaintiff's questions and concerns in the matter.   They have done nothing to address these issues.

7.   On one occasion, defendant Bank of America, N.A. attempted
to foreclose on the property listed above.  On another occasion
defendant Bank of New York Mellon, as Trustee, stated that they
were the owner of a promissory document.  Given this conflict,
it would appear that, any alleged, purported Note and / or mortgage,
if in fact ever authenticated by defendants, have been bifurcated
as to ownership thus creating a situation where a Note and a
mortgage are owned by different parties.

8.   Plaintiff further asserts firstly and foremostly that, as
indicated above, that there are genuine questions as to the
authenticity of the purported, alleged, fully disputed Note
and / or mortgage.

Secondly, without waiver and in the alternative, Plaintiff states
that defendants, by their own actions have created genuine issues
of double liability on Plaintiff.

Thirdly, the item which follow in all of the succeeding paragraphs
are posited arguendo in addition to the above so as to demonstrate
the wrong doing of the defendants vis-a-vis many other federal
statutes, torts, negligence and fraudulent acts.  In the items
that follow, if the Plaintiff's arguments above are sustained
then the defendants other violations may be moot.  However,
it is emphasized that all of the following violations are, assuming
arguendo, that there is a valid, alleged, purported Note and
/ or mortgage the premise of which is fully disputed.  The further
arguments are raised only so that matters which could have been
brought up are also included in this Complaint at this time.

9.   Defendants may alleged that the terms of the purported,
alleged, fully disputed Note and / or mortgage stipulated an
interest rate of 6.5% per annum with a fixed payment of about
Three Thousand Three Hundred Twenty Seven Dollars ($3327.00
US) per month.  The purported, alleged, fully disputed Note
and / or mortgage did not provide for nor did it in any way
carry or provide for escrow provision(s).

No party ever agreed to the addition nor the creation of escrow provisions as regard to nor to in any way be associated with this purported demand.

10.   On various occasions, defendants have by their own actions placed the Plaintiff and others in a situation where multiple parties may demand of Plaintiff and / or other parties the payment of alleged, purported sums which are not due on the same purported, alleged, fully disputed Note and / or mortgage. This goes well beyond any concern of double liability as the unavailability of an original Note and / or mortgage where as here: (1) the genuine authenticity is in question, (2) the physical location is unknown, (3) there is only an alleged, purported piece of paper or papers which some defendants present as endorsed in blank.  Given the above, such papers would be bearer instruments that anyone or multiple persons, parties or entities can demand payment upon and claim the funds due as their own. This then subjects Plaintiff to infinite, multiple demands for payment regardless of whether or not there is any securitization by virtue of a Note and / or mortgage to some other different party.

11.   Defendants have thus created a situation where there are four (4) separate and distinct broad issues each of which has multiple subparts.  The details of which will continue to be more fully disclosed herein given the complexity and chaos which defendants have created in order to mislead the public, the Plaintiff and the world so as to hide their conduct which exists on many different levels.

12.   The alleged, purported, fully disputed Note and / or mortgage was, according to defendants, non-recourse as it relates to the Plaintiff.  Yet defendants appear to be demanding payment from other people or parties who are not obligated to pay.  Yet,

defendants are demanding payments thus raising further concerns
as to double or considerably multiple liability, malfeasance
or multiple liabilities as to blank endorsements, assignments
to different parties of various instruments and, of course,
genuine questions as to the authenticity of the alleged, purported,
fully disputed Note and / or mortgage.

13.  Should there be a resolution of Plaintiff's initial concerns,
then Plaintiff alternatively suggests that Plaintiff specifically
contracted for all promises made by defendants.  All of these
provisions, which are for the benefit of the Plaintiff and his
successor in interest, are binding on all of the defendants
and their successors and / or assigns.

[  THIS SPACE LEFT BLANK INTENTIONALLY  ]

14,   Countrywide (and its successors and / or assigns in interest) is / are believed to have earned Service Release Premiums on servicing rights.

15.   Countrywide (and its successors and / or assigns in interest) directly or indirectly received additional compensation in regard to and in connection with the sale of instruments as well as bifurcating and securitizing.

16.   Countrywide (its successors and / or assigns in interest) received other compensation in connection with transactions which the defendants are now attempting to benefit from as well.

17.   Plaintiff, at all times fully, faithfully and conscientiously , until being violated by the defendants endeavored compliance even when obstructed by the defendants' actions.

18.   Defendant Bank of America, N.A. (its agents, officers, representatives, employees successors and / or assigns) fraudulently sent notices to Plaintiff and others not in privaty from whom defendants had no right to make such contacts nor demands.

19.   Starting on or about the beginning of the second quarter of 2011, defendant Bank of America, N.A. began making vastly differing demands on Plaintiff.

20.   Unbeknown to Plaintiff, defendant MERS transferred its position of Nominee to defendant Bank of America, N.A. some time in, on or about February or March  of 2012 with no mention of Countrywide or whomever provided funding.

21.   Defendant Bank of America, N.A. then apparently retained the legal firm of Trott & Trott and its attorneys located in Farmington Hills, Michigan to file an action against Plaintiff even though Bank of America, N.A. has never made any claim of any contractual relationship by or between it and the Plaintiff.

22.   Plaintiff, as indicated in item # 8 above, argues alternatively that at all times that he was and is a consumer within the meaning of the Truth in Lending Act, 15 U.S.C. §1602(h)(hereafter interchangeably referred to as the 'TILA') in regard to any matters which may be the subject of this litigation.

23.  Bank of America, N.A., Countrywide Home Loans, Trott & Trott and other defendants and any other firms or individuals acting on their behalf whether named or unnamed co-conspirators, were and are Collectors and / or Creditors within the meaning of the TILA in that they regularly extended or offered to extend credit and / or collection services.

24.  Any transactions involving the Plaintiff were and are for personal, family or household purposes, as per TILA, 15 U.S.C. §1602(h), at all times relevant to the subjects to this litigation.

25.  Any relevant real estate is a dwelling within the meaning of 15 U.S.C. §1640(a)(2)(A)(iii).

26.  Neither Bank of America, N.A. nor Coutrywide Home Loans nor MERS are holder(s) in due course.

27.  Neither defendant Bank of America, N.A. nor its predecessor Counrtywide nor MERS have ever extended any monies or funds in exchange for any security instrument or promise to pay.

28.  Defendants have failed, and or refused and or neglected to produce or assist in the production of any proof of any funds extended.

29.  All interested parties in this matter (defendants and their agents, representatives, officers successors and / or assigns) are subject to the Fair Debt Collection Practices Act, 15 U.S.C. §1692(a), et seq. (hereafter sometimes referred to as the 'FDCPA') at all times relevant to this matter. Plaintiff further states that the actions of the defendants are of an ongoing nature through and including the present time.

30.  Defendants and / or their predecessors in interest, Bank of America, N.A., Trott & Trott, Countrywide Home Loans and any other firms or individuals acting on their behalf whether named or unnamed co-conspirators at all relevant times were and / or are debt collectors, as defined by 15 U.S.C. §1692(a)(6).

31.  Defendants Bank of America, N.A., Trott & Trott, Countrywide and any and all other firms or individuals acting on their behalf whether named or unnamed at all relevant times were and / or are debt collectors as defined by U.S.C. 15 §1692(a)(6), regularly engaged in the practice of collecting on the account of another and, as such, are not exempt under the Fair Debt

Collection Practices Act (hereafter sometimes referred to as 'FDCPA') at all times relevant to the matters, allegations and proceedings hereunder.

32. The defendants in regard to their actions towards Plaintiff are subject to the Real Estate Settlement Procedures Act (hereafter sometimes referred to as 'RESPA'), 12 U.S.C. §2602(1).

33. Plaintiff, Eric Paul Wendlandt, is a person as defined by the Real Estate Settlement Procedures Act ('RESPA'), 12 U.S.C.§2602(5).

34. Defendant Bank of America, N.A. and other defendant officers, directors, agents representatives and / or assigns who have been apprised of these acts and have failed, refused and neglected to take action to rectify the actions of the corporate defendants are and / or have been falsely and fraudulently claiming to have possession of the alleged, purported and fully disputed Note and / or security instrument underlying this action.

35. Defendant(s) did not and have intentionally, willfully and wantonly failed to meet their statutory obligations under 24 CFR §203.04.

36. Defendants are not holder(s) in due course of the purported, alleged instrument. Defendants are subject to any and all, already fully disputed by Plaintiff, defenses and claims that may be asserted against any alleged, purported & fully disputed note payee, holder and / or maker.

37. Defendants, given that they do not have nor hold, holder in due course status, are liable to Plaintiff for all of his claims arising form all personal, civil, statutory and other common law defenses and / or claims that he may have or have had against defendants. Defendants are liable for the recoupment and / or set off for any and all claims or choses of action herein that might otherwise have been barred by any statute of limitations or other equitable doctrine.

38. Plaintiff, so as to preserve arguendo, all potential rights sent a Qualified Written Request (herein after sometimes referred to as a 'QWR'), to defendant Bank of America, N.A., to defendant MERS and to defendant Bank of New York Mellon pursuant to the Real Estate Settlement Procedures Act ('RESPA'), 12 U.S.C. §2605(e). Plaintiff has yet to receive a complete and / or adequate responsive reply from the corporate defendants to which this request was directed nor any of the related relief requested of the other defendants, to his QWR as of the date of this Complaint.

39. In March of 2010, Plaintiff was offered a loan modification of the fully disputed purported instruments which are the subject of this litigation by Bank of America, N.A.

40. An agent for Bank of America, N.A. (herein sometimes referred to as 'BOA') informed Plaintiff that a modification was entirely approved and that Plaintiff would be receiving a package from Bank of America, N.A. via Federal Express, a non-governmental mail delivery service, shortly.

41. Plaintiff did in fact receive a Federal Express package from defendant Bank of America, N.A. on or about early June 2011; however, contrary to the express contract created by BOA's authorized agent who operated with apparent authority, the package created the opposite result from that which had been previously promised.

42. Plaintiff immediately contacted defendant Bank of America, N.A.'s authorized agent, who indicated that she was devastated by this attempted complete reversal of the original agreement / approval and further apologized profusely to Plaintiff for BOA's lack of communication, misleading practices and bad faith efforts in dealing with Plaintiff pursuant to the modification approval that was contractually promised by BOA's agent.

43. Plaintiff at all times reserved and continues to reserve to this date all of his rights to enforce claims against BOA regarding the contract wherein BOA stated that the modification was approved fully as well as the complete reservation of all of his rights at equity and in law to pursue all of his lawful remedies.

44. Plaintiff detrimentally relied on BOA's promises and representations throughout. Plaintiff relied upon BOA's contract and representation that the modification was in deed completely and unequivocally approved. Plaintiff proceeded in good faith at all times in reliance upon BOA only to his, and his family's, detriment.

### COUNT I- EQUITABLE AND PROMISSORY ESTOPPEL

1.   Plaintiff restates and incorporates herein all of the other paragraphs in this Complaints as if fully rewritten and stated here verbatim, noting that many claims herein are being stated and argued in the alternative and that Plaintiff expressly reserves his right to present and argue alternative causes, actions and theories of recovery.

2.   Defendants have represented to Plaintiff, either directly or by their actions, inactions, acquiescence and / or failure to take remedial action(s) to correct, that they are or were the holders or owners of the purported, alleged Note and / or mortgage form the date of the purported creation to the date of these presents.

3.   Plaintiff has genuine questions as to the authenticity of the alleged, purported Note and / or mortgage.

4.   Defendants' assertions that they are holders in due course of said purported, alleged Note and / or mortgage are simply false, misleading and in bad faith.  Defendants have been asked on numerous occasions by Plaintiff in writing to respond to Plaintiff's concerns, corrections and requests; however, defendants have either obfuscated with unintelligible dribble and / or have never given Plaintiff clear and definitive evidence so as to answer these simple questions and address the erroneous data, requests and Plaintiff's desire for important correction as well.

5.   Plaintiff has expended hundreds and hundreds of hours in attempting to ascertain the correct information regarding this matter in reliance on the defendants' false and misleading as well as confusing representations.  Plaintiff has been harmed by false and misleading representations pursuant to the quest for authenticity of the purported, alleged instrument(s), who the parties claiming to hold or own these instrument(s) actually are and, given blank endorsements who, if anyone or any entity can in fact make any claim(s) on Plaintiff.

6.  Given that Plaintiff believes and asserts that this Honorable
Court can only and ultimately conclude that the defendants are
not the note nor are the true mortgage holders as of and at the
time of this filing, then Plaintiff asserts that the doctrines
of Equitable and Promissory Estoppel attach and should be applied
under this Count against the defendants; and, further Plaintiff
seeks damages, offset, fees, costs, recoupment and other relief
from defendants, both the Truth-in-Lending Act and under all
other derivative and non-derivative statutory and common law
theories and claims.

7.  Alternatively and additionally, defendants directly and or
through their agents, in concert or by their other illegal acts,
including but not limited to offering and approving Plaintiff's
modification and subsequently breaching that contract by denying
the modification, Bank of America, N.A. and others have inflicted
harm and damages upon the Plaintiff; thus causing Plaintiff to
incur monetary damages along with other emotional and prolonged
and significant damages which were brought upon Plaintiff by
defendants' illegal, misleading and deceptive practices.

8. Promissory and / or Equitable Estoppel is based upon a promise
which the promisor should reasonably expect to induce action
or forbearance on the part of the promisee and does induce such
action or forbearance. Under the doctrine(s) of Promissory
and / or Equitable Estoppel, a plaintiff brining a claim must
show; (1) a promise was made, (2) the promise was unambiguous
and not unenforceably vague and that, (3) he or she reasonably
relied upon the promise made to his or her detriment.
In this instant case, there clearly was a promise made. Said
promise was clear and unambiguous to the promisor and the promisee.
The Plaintiff then relied on said promise, which ultimately
resulted in grave harm and detriment to the Plaintiff and others.
Further, the harm and detriment Plaintiff suffered was economically
servere. The substantial loss to the promisee in acting in
reliance was completely and fully foreseeable by the promisor.
Subsequently, the promisee acted reasonably and like a rational
party would in justifying his reliance on the promise that was
made to him and then subsequently taken away, for reasons unknown
to Plaintiff.

### COUNT II- REAL ESTATE SETTLEMENT PROCEDURES ACT

1. Plaintiff restates and incorporates herein all of the other paragraphs in this Complaint as if fully rewritten and stated here verbatim, noting that many claims herein are being stated and argued in the alternative and that the Plaintiff expressly reserves his right to present and argue alternative causes, actions and theories of recovery.

2. Bank of America, N.A. and / or its agents, successors, assigns and other parties / defendants with whom this defendants has otherwise acted have failed, refused and / or otherwise neglected to adequately or respond at all to the Qualified Written Request(s) sent to them on multiple dates pursuant to 12 U.S.C. §2605(e) part of the Real Estate Settlement Procedures Act, herein and sometimes hereafter referred to as 'RESPA'.

3. Defendants have violated RESPA in multiple respects including but not limited to reporting the purported account to major credit reporting companies during the sixty (60) day period from and following their receipt of the Qualified Written Request(s) through to the expiration of the statutory sixty (60) day period in which defendants had and were required to fully respond.

4. As a result of these and or other violations of RESPA under this Count, defendants are liable to Plaintiff for damages which cannot be fully ascertained at this time but which will include and likely exceed the following: actual damages, statutory damages in the amount of $1,000,000.00 (One Million United States Dollars) or more, costs, fees, expenses, attorney's fees and the like pursuant to 12 U.S.C. §2605(f)(1) including but not limited to or by recoupment and or set-off.

## COUNT III- FAIR DEBT COLLECTION PRACTICES ACT

1.   Plaintiff restates and incorporates herein all of the other paragraphs in this Complaint as if fully rewritten and stated here verbatim, noting that many claims herein are being stated and argued in the alternative and that Plaintiff expressly reserves his right to present and argue alternative causes, actions and theories of recovery.

2.   Defendants, by sending written correspondence to Plaintiff and or allowing their agents, representatives, surrogates and assigns to communicate with Plaintiff by sending correspondence that was misleading, false, fraudulent, usurious, dishonest unfair and / or deceptive, violated the Plaintiff under the Fair Debt Collection Practices Act, 15 U.S.C. §1692(a), et seq. (hereafter sometimes referred to as the 'FDCPA').

3.   Defendants and their associated co-defendants sent or allowed to be sent to Plaintiff many different demand statements between the years 2011 and 2012.   The alleged, purported and now fully disputed Note and / or mortgage that is the subject of this litigation was predicated on a fixed rate of interest at 6.5% per annum with a total purported, alleged monthly demand of Three Thousand Three Hundred Twenty Seven United States Dollars ($3327.00 US).   The monthly demand statements sent to Plaintiff between 2011 and 2012 varied by thousands of US dollars. Plaintiff contacted defendants in numerous attempts to correct and ascertain the nature and cause of such enormous disparity in the demands but was never given anything that even remotely resemble a clear or understandable explanation for such, now fully disputed, demands on Plaintiff. It is this very conduct by the defendants that created the ongoing problems with regard to defendants' pressue-filled demands on Plaintiff.

Plaintiff even had his father, Mr. Eric W. Wendlandt, attempt to satisfy a demand toward the fully disputed, purported, alleged demand by taking a demand payment to defendant Bank of America, N.A.'s Plainfield, NE, Grand Rapids, Michigan branch sometime in or about the first quarter of 2012 in excess of the fully demanded amount by defendant Bank of America, N.A. The agent / authorized representative for Bank of America, N.A. refused the demand and declined to accept Mr. Eric W. Wendlandt's attempt to satisfy defendant Bank of America, N.A.'s demand indicating to Mr. Eric W. Wendlandt that the proffered demand amount was "not acceptable."

4. Due to the false, misleading and deceptive collection practices of the defendants in the above paragraphs (including but not limited to Count III, paragraph 3), Plaintiff did not know, nor does he know to this date, the actual demand amount due as and for the monthly demand due for the alleged, purported, fully disputed instrument(s).

5. On or about May 2012, defendants filed a foreclosure action against Plaintiff and scheduled a Sheriff's sale at the Kent County Courthouse for the latter part of May 2012. Defendants' actions have at all times not been in accordance with the terms of the alleged, purported, fully disputed Note and / or mortgage and / or applicable law(s). Due to defendants improper acts, Plaintiff was forced into filing a Chapter 13 Bankruptcy, which cost the Plaintiff approximately Twenty Four Thousand Dollars ($24,000.00 US) in attorneys' fees, as a result of the defendants wrongful actions against Plaintiff.

6. During the pending bankruptcy, defendants through their corporate alter ego, issued a payoff amount to the Federal Bankruptcy Court that was false. Plaintiff has requested this document from the defendants but the defendants have failed, refused and or neglected to issue this document thus failing once again to fulfill the demands and request in the Plaintiff's Qualified Written Request.

7.   Plaintiff will be able to demonstrate, pending receipt of a responsive reply, that defendants purported charges and demands for the payment of various fees and expenses not legal nor authorized in the purported, alleged, fully disputed Note and / or mortgage and thus are in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692(a), et seq. (herein sometimes referred to as the 'FDCPA'); and, defendants are liable to Plaintiff for their false, misleading and / or deceptive representations in connection with the attempted collection of the purported, alleged, fully disputed Note and / or mortgage in further violation of 15 U.S.C. §1692(e).

8.   Plaintiff has suffered emotional distress as a result of defendants' actions.

9.   Defendants are liable to Plaintiff for their violations of the FDCPA in an amoutn equal to or greater than: the actual damages for each of defendants' violations of the FDCPA, 15 U.S.C. §1692(a)(1); statutory damages in the amount of One Million United States Dollars ($1,000,000.00 US), 15 U.S.C. §1692(a)(2)(A); and costs of this action and attorneys' fees, as provided for under the FDCPA, 15 U.S.C. §1692 (a)(3).

10.   Despite repeated requests, defendants have collectively failed, refused and neglected to validate the purported, alleged fully disputed Note and / or mortgage.  In the absence of a valid instrument, there can be no obligation to the Plaintiff and thus no lawful foreclosure action.

### COUNT IV- DETRIMENTAL RELIANCE

1.  Plaintiff restates and incorporates herein all of the other paragraphs in this Complaint as if fully rewritten and stated and argued in the alternative and that Plaintiff expressly reserves his right to present and argue alternative causes, actions and theories of recovery.

2.  Plaintiff relied upon defendant Bank of America, N.A. and others accounting practices, stated demand amounts at various points in time and the offer and subsequent approval and acceptance of Plaintiff's loan modification.

3.  Continuously thereafter all of the other defendants have aided defendant Bank of America, N.A. by ratifying or otherwise assisting each other in their enterprise.

4.  Defendants and their co-conspirators issued false, misleading and deceptive demand statements to the Plaintiff which caused Plaintiff substantial harm and resulted in a foreclosure action which the Plaintiff was forced to fight, which cost the Plaintiff substantial sums of money, and which Plaintiff ultimately was forced to stay through a bankruptcy filing.

5.  Defendant Bank of America, N.A. and its co-conspirators issued false, misleading and deceptive demand amounts to Plaintiff and to the bankruptcy court which caused significant harm to Plaintiff, forcing him to file a Chapter 13 bankruptcy to stay the defendants' foreclosure action.

6.  Defendant Bank of America, N.A.'s notice to Plaintiff that Plaintiff's loan modification offer, approval and acceptance was simply false, misleading and an outright lie.

7.   Plaintiff relied on his perception that Defendant(s) were dealing honestly and fairly with him and notice of approval of the offered loan modification and subsequent acceptance by their authorized agent was thought to be in good faith at the time Plaintiff accepted the approval of Bank of America, N.A.'s agent.    Plaintiff    arranged    his    finances    around    the representations made by defendant Bank of America, N.A.'s offer and approval of the loan modification offered to Plaintiff by one of defendant Bank of America, N.A.'s authorized agents. In fact, Bank of America, N.A.'s agent was so pleased and elated that the approval offer was being given to Plaintiff, she personally notified Plaintiff of the offer and approval by saying, "I have wonderful news for you!  Our modification offer is approved.  Look for a FedEx package soon.  You will be quickly wanting to accept our offer and approval to you!" Bank of America, N.A.'s representative also asked shortly after notifying Plaintiff of the offer and the approval for Plaintiff to write a letter of thank you or commendation to her for her, ~~for her~~, which Plaintiff promptly did through the form of an email letter of thank you and commendation. This document has been requested repeatedly by Plaintiff however Bank of America, N.A. has refused, failed and neglected to oblige Plaintiff in his request for this document.

8.   Defendant agents and purported attorneys of defendant Bank of  America,  N.A.  in  furtherance  of  their  conspiracy  to illegally  obstruct  Plaintiff,  have  failed,  refused  and neglected  to  provide  essential  documentation  including,  but, not  limited  to  the  aforementioned  'thank  you'  email.  In  so doing they have suggested that it and other communications are not relevant to this matter.  They are frankly attempting to further  their  illegal  acts  while  attempted  to  cloak  their malfeasance  under  a  poorly  veiled  argument  of  color  of  law.

### COUNT V— UNJUST ENRICHMENT

1.  Plaintiff restates and incorporates herein all of the other paragraphs in this Complaint as if fully rewritten and stated and argued in the alternative and that Plaintiff expressly reserves his right to present and argue alternative causes, actions and theories of recovery.

2.  Defendant Bank of America, N.A. and others in issuing false, deceptive and misleading monthly demand statements to Plaintiff and continuing to collect based on false and erroneous demand amounts was unjustly enriched.

3.  Defendant Bank of America, N.A., in issuing false, deceptive and misleading demand statements to both the Plaintiff and the Federal Bankruptcy Court in Grand Rapids, Michigan was unjustly enriched. Plaintiff is awaiting and or has sought from defendants, including but not limited to defendant Bank of America, N.A., demands which were inflated false and misleading to Plaintiff and the bankruptcy court, noting the defendants in refusing to provide this information are working together in furtherance of their obstructive conspiracy against Plaintiff.

4.  Defendants have refused to allow Plaintiff to determine the authenticity of the alleged, purported, fully disputed Note and / or mortgage.

5.  Defendants have refused Plaintiff's genuine questions and concerns in providing proof of valid assignments, nor a chain of title that is proper or legal for foreclosure purposes under the laws of the State of Michigan.

6.  Defendant Trott & Trott, in issuing false, misleading and deceptive demand amounts on its foreclosure notice was unjustly enriched.

7.    Defendant Blank & Rome, LLP and attorney Jonathan Moore
have actively engaged in conduct to further the wrongful conduct,
are  receiving  payment(s)  to  further  the  civil  fraud,
obstruction and conspiracy thus being unjustly enriched for
their and the other defendants' wrongful conduct.

8.  Defendants Bank of America, N.A. and Trott & Trott damaged
Plaintiff in issuing erroneous, false, deceptive and misleading
demand  amounts  thereby  damaging  Plaintiff  financially,
emotionally and monetarily.

9.  Defendants who have assisted defendant Bank of America,
N.A.  in  perpetrating,  concealing,  hiding,  disguising,
conspiring and / or obstructing so as to further their illegal
acts have directly or indirectly benefitted form this unjust
enrichment to the detriment of the Plaintiff.

## COUNT VI- FRAUD / NEGLIGENT MISREPRESENTATION

1.  Plaintiff restates and incorporates herein all of the other paragraphs on this Complaint as if fully rewritten herein and stated above verbatim, noting that many claims herein are being stated and argued in the alternative and that Plaintiff expressly reserves his right to present and argue alternative causes, actions and theories of recovery.

2.  Defendants directly or indirectly have conspired to commit fraud, and / or to hide their prior acts of fraud against Plaintiff by issuing false, deceptive, erroneous and misleading demand amounts and by alternatively concealing damaging or lost documents as well as fabricating and or failing to produce documents that will, when and if defendants produce such documents, will prove to be damaging and toxic to defendants.

3.  The actions of the defendants in withholding requested documents, if they exist at all, is in furtherance of these fraudulent acts.

4.  The defendants are continuing to engage in these acts, illegal practices and fraudulent activities through the present thsy tolling any applicable statutes of limitation.

5.  Defendants have consistently negligently misrepresented the facts, any demands due, their authority, the Plaintiff's obligations and other matter which will be more fully presented at the trial of this matter.

6.  Defendants have engaged in these improper acts knowingly despite Plaintiff advising them repeatedly of the impropriety of their acts.  Defendants continued in these acts to the detriment and damage of Plaintiff knowing full well that they were so doing after being repeatedly alerted to these acts by Plaintiff.

### COUNT VII- BAD FAITH

1.  Plaintiff restates and incorporates herein all of the other
paragraphs on this Complaint as if fully rewritten herein and
stated above verbatim, noting that many claims herein are being
stated and argued in the alternative and that Plaintiff
expressly reserves his right to present and argue alternative
causes, actions and theories of recovery.

2.  Defendant Bank of America, N.A.'s issuance of offer and
approval, the subsequent apparent withdrawal, then purported
subsequent denial of the modification, then demand and require
that Plaintiff expend significant additional financial
resources, time and provide a costly appraisal constituted Bad
Faith.  Such delays were calculated by defendants to cause harm
to the Plaintiff thus constituting bad faith dealing by the
defendant Bank of America, N.A., along with all of the other
co-conspiring defendant officers, agents and authorized
representatives of Bank of America, N.A.

3.  Plaintiff, despite concerns regarding the defendants'
demands due to the pressure exerted upon him by the defendants
continued to faithfully comply with all requests, requirements
and supplied all of the necessary documentation, explanation,
property data and applicable data for defendant Bank of
America, N.A.  It appears that defendant Bank of America, N.A.
decided to renege on their contract with the Plaintiff's in
spite of the countless hours and dollars the Plaintiff expended
during the process.

4.  Defendant orchestrated its efforts in order to place
Plaintiff in financial and emotional distress in so doing
taking advantage and pressuring Plaintiff to his detriment.

5.  Plaintiff was damaged by this continuing bad faith conduct
and also damaged emotionally and monetarily.  Defendants have
taken no corrective measures in this bad faith dealing to date.

## COUNT VIII- QUIET TITLE

1. Plaintiff restates and incorporates herein all of the other paragraphs on this Complaint as if fully rewritten herein and stated above verbatim, noting that many claims herein are being stated and argued in the alternative and that Plaintiff expressly reserves his right to present and argue alternative causes, actions and theories of recovery.

2. None of the defendants in the instant action can prove the validity of the purported, alleged, fully disputed Note and / or mortgage, nor have they produced a valid Note or mortgage, nor have they allowed or permitted Plaintiff the opportunity to verify and authenticate any of the above. The response to Plaintiff's Qualified Written Request is totally inadequate, incomplete, evasive and in furtherance of defendants improper conduct. Defendant Bank of New York Mellon failed to respond to Plaintiff's Qualified Written request at all, even after the request was sent to them again by first class mail after the first, which was sent via Certified United States Mail, Domestic Return Receipt Requested and Received.

3. None of the defendants in the instant action have or can prove that any one of them is / are the holder in due course of the alleged, purported, fully disputed Note and / or mortgage. Defendants bifurcation of the alleged, purported, fully disputed Note and / or mortgage would obviate the possibility of a lawful foreclosure in the State of Michigan.

4. Defendants have created a burden and 'cloud' upon the title to this property to which they are not entitled due to the blank endorsement on the fully disputed copy of the purported, alleged Note and / or mortgage.

5. Plaintiff respectfully requests this Honorable Court to issue an Order(s) that effectuate the 'free & clear title' of the property with Plaintiff as title holder with no liens, 'debts' and / or other encumbrances against the title.

## COUNT IX- QUANTUM MERUIT

1.  Plaintiff restates and incorporates herein all of the other paragraphs in this Complaint as if fully rewritten herein and stated above verbatim, noting that many claims herein are being stated and argued in the alternative and that Plaintiff expressly reserves his right to present and argue alternative causes, actions and theories of recovery.

2.  Based upon the legal principals and theories associated with and commonly referred to as 'Quantum Meruit', Plaintiff hereby rescinds any alleged privity with any and all of the defendants.  Plaintiff was not properly credited for funds which were fraudulently exacted from him by the defendants. The demand amounts on the alleged, purported and fully disputed Note and / or mortgage were entirely false, deceptive and erroneous.  Plaintiff has repeatedly requested complete and accurate accounting records; but, as of the date of this Complaint, has received non-repsonsive, evasive, incomplete and / or non-existant responses from the defendants, their agents, officers and / or assigns.

3.  The complained of acts have been perpetrated by all defendants collectively including but not limited to Blank & Rome, LLP and its agent individually, Bank of America, N.A., Bank of New York Mellon, MERS Corporation, Trott & Trott, Fabrizio & Brook, P.C. along with any and all other defendants that have been cited or may be added to this Complaint who have aided and collectively participated and or otherwise reinforced the collective wrongdoing by using their various professional positions / stature and professional standing to give their complicity, name and thus their personal 'stamp of approval' to the defendants collective wrongdoing / fraudulent enterprise(s).

### COUNT X PUNITIVE DAMAGES

1.   Plaintiff restates and incorporates herein all of the other paragraphs in this Complaint as if fully rewritten herein and stated above Verbatim, noting that many claims herein are being stated and argued in the alternative and that Plaintiff expressly reserves his right to present and argue alternative causes, actions and theories of recovery.

2.   Plaintiff states that the defendants actions are shameful and in blatant disregard of the limits of appropriate business conduct or ethics.  Plaintiff asserts that the defendants have engaged in this conduct so as to damage the Plaintiff and to gain an unfair advantage against the Plaintiff / the American public as well.

3.   Given the financial strength of the collective defendants and their terrible, shameful conduct, Plaintiff states that defendants should be punished and / or required to pay "smart money" so as to be peterred from engaging in such conduct in the future.

4.   Further, Plaintiff avers that there are extra damages and / or treble damages based on certain statutory provisions; and, that defendants should be required to pay these extra damages to Plaintiff.

5.   Plaintiff requests that defendants be required to pay punitive damages and additional damages above and beyond the actual damgages suffered by Plaintiff.

## COUNT XI- CLASS ACTION CLAIMS

1.  Plaintiff restates and incorporates herein all of the other paragraphs in this Complaint as if fully rewritten herein and stated above verbatim, noting that many claims herein are being stated and argued in the alternative and that Plaintiff expressly reserves his right to present and argue alternative causes, actions and theories of recovery.

2.  Plaintiff states that there is a "Class / Group" of similarly situated individuals who have similar claims against these defendants.

3.  THe complete Class / Group will be determined during discovery; but, is expected to exceed 100,000 (One Hundred Thousand) individuals and / or entities, not to mention those who will be identified after the open period of advertising effort which will provide information to the public so as to inform the public of the defendants clandestine business practices.

4.  Plaintiff requests that this Honorable Court certify this action as a 'Class Action' lawsuit.

## COUNT XII - UNKNOWN DEFENDANTS AND THIRD PARTIES

1.  Plaintiff restates and incorporates herein all of the other paragraphs in this Complaint as if fully rewritten herein and stated above verbatim, noting that many claims herein are being stated and argued in the alternative and that Plaintiff expressly reserves his right to present and argue alternative causes, actions and theories of recovery.

2.  Plaintiff states that due to defendants collective failures to provide Plaintiff with the simple information necessary for him to properly identify all necessary parties, he may have to amend his Complaint.  The absence of any necessary and indispensable parties is due to the wrongdoing, fraud, obstruction and conspiracy of the various defendants.

3.  Plaintiff states that he is the Third Party Beneficiary of agreements (including but not limited to PSA's and / or other purchase / closing documents relevant to the transactions by or between Bank of America, N.A. and Countrywide and / or Bank of New York Mellon and / or Trott & Trott and / or Blank & Rome, LLP and / or MERS Corporation and / or Fabrizio & Brook, P.C. which effect the Plaintiff's rights and defendants obligations), pertaining to both known and unknown defendants which these very defendants have refused to provide to Plaintiff despite his repeated and numerous requests for the aforementioned information.

**COUNT XIII - BREACH OF TRUST, CONTRACT AND BENEFICIAL INTEREST**

1.  Plaintiff restated and incorporates herein all of the other
paragraphs in this Complaint as if fully rewritten herein and
stated above verbatim, noting that many claims herein are being
stated and argued in the alternative and that Plaintiff expressly
reserves his right to present and argue alternative causes, actions
and theories of recovery.

2.  Plaintiff states that the 'loan' originally held by the initial
holder was or became part of a securitized pool of mortgage 'loans'.

3.  Plaintiff has genuine questions as to the authenticity of the
purported, alleged, fully disputed Note and / or mortgage.

4.  By being part of a securitized pool of mortgage 'loans', the
Plaintiff's 'loan' is subject to the dictates of a 'Pooling and
Servicing Agreement' (hereafter sometimes referred to as a 'PSA').
The PSA was not followed and, as such, the purported, alleged, fully
disputed Note and / or mortgage, if in fact any such mortgage or
assignment of such mortgage ever even occurred  was violative of
the PSA and MCL §600.3204(3).

5.  It is required that there be a properly recorded chain of title
in order to foreclose in the State of Michigan, where the property is
located.  Plaintiff asserts that there is no valid chain of title based
upon a break in the chain of title as well as one or more invalid
assignments executed on the part of the defendants.

6.  Defendants refusal to provide a copy of the PSA, a quasi public
document given their status and user of federal funds, supports Plaintiff's
claim that defendants are acting in a stealth-like manner due to the
clear damage and toxicity that freely supplying said documents and
allowing the 'sun shine in' will prove devasting to all of the defendants,
current and perhaps future defendants, as the discovery process progresses.

7.  Plaintiff is a beneficiary of any and all agreements including but
not limited to the aforementioned Pool and Servicing Agreement and other
documents that will be obtain during the discovery process.

**COUNT XIV** - **ADDITIONAL STATUTORY AND OTHER VIOLATIONS**

1.  Plaintiff restates and incorporates herein all of the other
paragraphs in this Complaint as if fully rewritten herein and
stated above verbatim, noting that many claims herein are being
stated and argued in the alternative and that Plaintiff expressly
reserves his right to present and argue alternative causes, actions
and theories of recovery.

2.  Defendants have failed, reused and neglected to follow the Fair
Debt Collection Practices Act, 15 U.S.C.S §1692 et seq. (hereafter
sometimes referred to as the FDCPA).

3.   Defendants have failed, refused and neglected to adequately,
thoroughly and or thoughtfully respond to properly served Qualified
Written Request(s) (sometimes referred to as QWR's) in a timely and
or meaningful way or chose to ignore the QWR's entirely and completely.

4.   Defendants or their agents collectively have failed to properly
credit demand payments; and, have collective conspired to advance the
propriety of their collective violations of the Plaintiff's rights.

5.  To date, there has been no proper presentment and / or proof of
the purported, alleged, fully disputed Note and / or mortgage in that
there are genuine questions as to the authenticity of the purported,
alleged, fully disputed Note and / or mortgage.  These concerns are
amplified given that defendants have refused to allow the Plaintiff or
his agents / experts the opportunity to examine the purported, alleged
fully disputed Note and / or mortgage in its Original form to ascertain
its authenticity.  Without an original Note or mortgage there is no 'debt'.
There has been no proper or effective assignment produced by defendants.
There has been no physical display of either to Plaintiff.

6.  Defendants collective scheme to improperly enrich themselves has
resulted in their failure to properly account for demands from
Plaintiff.    Some of Plaintiff's specific requests for correction
and / or credit(s) have been unequivocally ignored by the defendants.
7.  Defendants' improper collective conduct has been designed and
effected to violate the Plaintiff and benefit the defendants.

## COUNT XV - MICHIGAN 3-301 UNIFORM COMMERCIAL CODE

1.  Plaintiff restates and incorporates herein all of the other
paragraphs in this Complaint as if fully rewritten herein and stated
above verbatim, noting that many claims herein are being stated
and argued in the alternative and that Plaintiff expressly reserves
his right to present and argue alternative causes, actions and
theories of recovery.

2.  Simply, defendants are in violation, have violated and continue
to violate the Michigan Uniform Commercial Code 3-301 categorized
as 'Person Entitled to Enforce Instrument'.

3.  Defendants have, through misleading, deceptive and obstructive
tactics have violated the Michigan Uniform Commercial Code 3-301.

4.   Defendants are not holders in due course, nor have they shown
in any way that they are holders in due course by denying the Plaintiff
answers to the genuine question(s) of authenticity pursuant to the
alleged, purported, fully disputed Note and / or mortgage.  Defendants
lack standing to enforce any alleged, purported, fully disputed
Note and / or mortgage instrument in this litigation.

<u>COUNT XVI - MICHIGAN COMMERCIAL CODE 3-302 HOLDER IN DUE COURSE</u>

1.  Plaintiff restates and incorporates herein all of the other
paragraphs in this Complaint as if fully rewritten herein and stated
above verbatim, noting that many claims herein are being stated and
argued in the alternative and that Plaintiff expressly reserves his
right to present and argue alternative causes, actions and theories
of recovery.

2.   Defendatns are in violation and continue to violate the Michigan
Uniform Commercial Code 3-302 known as 'Holder in Due Course'.

3.   Defendants are not holders in due course and lack any and all
standing to act as or operate as a holder in due course for any
and all of the alleged, purported, fully disputed Note and / or
mortgage which is partly the subject of this litigation.

## COUNT XVII - MICHIGAN COLLECTION PRACTICES ACT

1.  Plaintiff restates and incorporates herein all of the other paragraphs in this Complaint as if fully rewritten herein and stated above verbatim, noting that many claims herein are being stated and argued in the alternative and that Plaintiff expressly reserves his right to present and argue alternative causes, actions and theories of recovery.

2.  Defendants are in violation and have violted the Michigan Collection Practices Act, MCL §445.251 et. seq. by misrepresenting, misleading and / or otherwise obstructing the reasonable and relevant effort and request for information by Plaintiff contained in Plaintiff's multiple Qualified Written Request(s) to various defendants.  One or more of the defendants did not respond all to Plaintiff's QWR nor responded in any way to the two (2) different requests to validate any purported, alleged, fully disputed Note and / or mortgage.

3.  Defendants promised to produce other important documents in the only sparsely-substative response to Plaintiff's QWR but have not in any way honored nor forwarded any of the promised documents or information requested by Plaintiff in the first QWR sent to one of the defendants. One of many examples of this is defendants failing to produce nor forward to Plaintiff documents, all of the historic documentation, statements and / or other relevant documents to Plaintiff even after Plaintiff re-requested many important, relevant documents within the spirit of his multiple QWR's (RESPA 12 U.S.C. §2605).

4.  Plaintiff asked for as part of the QWR that defendants supply and forward copies of statements believed to be in error by Plaintiff. Production of such documents would prove the Plaintiff's argument that defendants are not compliant and did violate the Michigan Collection Practices Act.  These statements, when produced by defendants, will show extremely wide, conflicting & deceptive demands by defendants which Plaintiff was pressured into accepting at that time.

5.  By the entirely ludicrous, utterly incomplete response to Plaintiff's
QWR, defendants are clearly withholding damning, fatal information
relevant to this matter and continuing to do so in an obstructive,
deceptive and shameful manner.

6.  Defendants have withheld pertinent, basic information that has
been repeatedly requested by Plaintiff for the purpose(s) of correction,
expalantaion and / or remunerating Plaintiff all well within the
spirit of the Act.

7.  Defendants also were informed in multiple United States Certified
mailings by Plaintiff to Defendants that, from the date of the respective
writings of the initial correspondence to Defendants from Plaintiff, that
Plaintiff's address of record should be used by defendants for all
correspondence.  After repeatedly notifying defendants over and over again
via United States Certified Mail, defendants, to this date, continue to
harass non-parties to this matter by slamming and smashing the non-
interested parties with communiques by mail, telephone and other
communication collection techniques.   Defendants continue on this path
in spite of the emotional and mental toll and trauma they have exerted
and continue to exert on non-parties to this matter, persons having no
obligation nor culpability to defendants.

8.  Defendants' unexplainable reasons to continue to deceive, mislead,
obstruct and / or attempt to involve non-parties continually is a
clear violation of the Michigan Collection Practices Act.

**COUNT XVIII -   UNIFORM COMMERCIAL CODE VALIDATION OF DEBT**

1.  Plaintiff restates and incorporates herein all of the other
paragraphs in this Complaint as if fully rewritten herein and stated
above verbatim, noting that many claims are being stated and argued
in the alternative and that Plaintiff expressly reserves his right
to present and argue alternative causes, actions and theories of
recovery.

2.   Defendants have failed in every way to validate the purported,
alleged, fully disputed Note and / or mortgage that is the partial
subject of this litigation.

3.  Defendants refuse to authenticate the alleged, purported, fully
disputed Note and / or mortgage that is partially the subject of this
litigation.

4.  Defendants have not validated the alleged, purported, fully disputed
Note and / or mortgage after multiple requests for validation were sent
to various defendants via United States Certified mail.  There was no
response to multiple requests for validation of 'debt' by the purported,
alleged, fully disputed 'owner' of said Note and / or mortgage thus rendering
the alleged, purported, fully disputed Note and / or mortgage null and
void in accordance with the State of Michigan's Uniform Commercial Code as it
pertains to the rules, laws and statutes for the proper validation,
verification and / or, most importantly, authentication of alleged 'debt'.

## COUNT XVIIII - FAIR CREDIT REPORTING ACT

1.  Plaintiff restates and incorporates herein all of the other paragraphs in this Complaint as if fully rewritten herein and stated above verbatim, noting that many claims are being stated and argued in the alternative and that Plaintiff expressly reserves his right to present and argue alternative causes, actions and theories of recovery.

2.  Plaintiff states that defendants have violated the requirements and duties incumbent upon them by the Fair Credit Reporting Act (herein after and sometimes referred to as the FCRA).

3.  As by illustration and not intended as an all-inclusive listing of each and every technical, literal and factual violation of the FCRA, Plaintiff notes below some examples of defendants' acts which will be more fully presented at trial as many of the actions of the defendants have been hidden by them in their conspiracy to avoid Plaintiff's reasonable, numerous requests for information which have been either utterly ignored or inadequately responded to only in part through defendants' evasive, dilatory and specious acts and deceptive conduct.

4.  Defendants have continually and repeated reported erroneous credit data to the three major credit reporting agencies.

5.  After a complete, thorough and exhaustive audit of the accounting and servicing of the alleged, purported, fully disputed Note and / or mortgage, it will be apparent that defendants repeatedly reported false, incorrect and deceptive information to the three major credit reporting bureaus and perhaps others additionally as well.

6.  Defendants have failed, refused and neglected to respond to Plaintiff's request for validation of the alleged, purported, fully disputed Note and / or mortgage.

7.  Plaintiff has served multiple written requests for validation
of the alleged, purported, fully disputed Note and / or mortgage
to both Bank of America, N.A. and Bank of New York Mellon.  The
Bank of New York Mellon did not respond at all to two validation
of the alleged, purported, fully disputed Note and / or mortgage.
Bank of America, N.A. nor its agents adequately validated or
verified the alleged, purported, fully disputed Note and / or
mortgage.

8.  Defendants Bank of America, N.A., with the aid of their
lawyers Fabrizio & Brook, P.C., whom also represent Bank of
New York Mellon per their correspondence to Plaintiff, and others
have issued various correspondence in furtherance of their conspiracy,
obstructive conduct and violation of the FCRA.  Defendants have
failed to refute, say, aver and / or in any state that the alleged,
purported, fully disputed Note and / or mortgage is / are valid.

9.  Plaintiff subsequently sent two or more requests for validation
of the purported, alleged, fully disputed Note and / or mortgage
to both defendants' Bank of America, N.A. and Bank of New York
Mellon in the preceeding months commencing on or about 22 October
2013, with additional requests sent on 01 November 2013 and
07 November 2013 as well as copies of the 07 November 2013 request
for validation of the alleged, purported, fully disputed Note
and / or mortgage being sent also on 08 November 2013.

10.  Plaintiff has provided notice of a dispute of the alleged,
purported, fully disputed Note and / or mortgage to TransUnion,
Esperian and Equifax, the three major credit reporting agencies,
all of which have not responded to said requests nor have any
of the defendants responded to the aforementioned correspondence
as of the filing date of this Complaint.

11.  The information requested by Plaintiff in Plaintiff' QWR
regarding specific acts of erroneous accounting and servicing
issues have all been summarily ignored, avoided and / or neglected,
and / or obfuscated all this in further violation of the FCRA.
12.  Plaintiff reserves the right to supplement, if necessary
upon receipt of the proper and complete answers to Plaintiff's
QWR and / or discovery as Plaintiff will then be able to further
detail defendants' faulty and erroneous accounting and servicing
practices as they related to the FCRA.
13.  Defendants continued and still continue to report negative
credit information to the three major credit reporting agencies
during the pendency of the QWR's required sixty (60) day period
thus violating the FCRA as well as the RESPA.
14.  Under §1681s - 2(a)(1)(C), defendants have failed to alert
Plaintiff of the negative reporting event though Plaintiff,
in accordance with the statute(s), "clearly and conspicuously
specified the address of notice....etc.".
15.  Plaintiff has repeated notified defendants of his valid,
current mailing address of record, whenever it may change over
time and when, including any temporary address there may have
been at any particular time.  This was done with specificity
at any time when a particular address was to be used for a particular,
specified period of time.  Thus, there could never be any excuse
for defendants claiming that they did not know exactly where
Plaintiff could be reached via the United States mails.
16.  Notwithstanding that the defendants have always had clear
and definite notice of where to mail important correspondence,
notices, legal process and the like to Plaintiff, the defendants
have continually and repeatedly failed, refused and neglected
to use the address clearly and conspicuously provided to them
many times and to instead correspond to other addresses / addressees
and with other people or persons that are not a party to this
matter nor have anything to do with this instant case.

17. Defendants chose to ignore the relevant statues and further chose to ignore Plaintiff's notices to them and instead went about corresponding where they knew or should have known Plaintiff was not able to receive any notices and / or correspondence.

18. After defendants repeatedly failed to validate the so-called alleged, purpoted, fully disputed Note and / or mortgage, all negative credit reporting as well as the erroneous accounting and servicing related to all alleged accounts with regard to which Plaintiff had not received any adequate, plausible or credible response.

19. Instead, defendants violated the FCRA by failing to report the non-validation and / or non-verification of said purported, alleged, fully disputed Note and / or mortgage to the three major credit reporting agencies in despite the October 2013 request that they do so by the Plaintiff along with the notices sent to the three major credit reporting agencies sent by Plaintiff in or around the first part of 2014.

20. Wherefore, Plaintiff requests that he be awarded actual, compensatory, statutory, other and punitive damages for the defendant's violations, breaches and acts as enumerated in this Count in an amount as yet not fully determined but which will exceed One Million Dollars ($1,000,000.00 US).

## COUNT XX - FAIR CREDIT BILLING ACT

1. Plaintiff restates and incorporates herein all of the other paragraphs in this Complaint as if fully rewritten herein and stated above verbatim, noting that many claims are being stated and argued in the alternative and that Plaintiff expressly reserves his right to present and argue alternative causes, actions and theories of recovery.

2. Plaintiff has made multiple requests for validation of the alleged, purported, fully disputed Note and / or mortgage which the relevant defendants (purported banks, servicers, alleged holders and the like) have failed, refused and / or neglected, either entirely or in significant part, to make a good faith response or no response at all as to the purported 'owner' of the alleged, purported, fully disputed Note and / or mortgage.

3. Plaintiff has repeatedly complained of inaccurate, false and / or fraudulent accounting and servicing business practices in regard to the alleged, purported, fully disputed Note and / or mortgage to which there has been no response as of the date of this Complaint.

4. Defendants, their officers, agents and representatives have failed, refused and neglected to respond to these requests by Plaintiff.

5. Plaintiff has repeatedly requested billing information from the defendants, and, on all occasions, defendants have thwartedd his efforts and reasonable requests. The defendants have failed, refused and neglected to provide appropriate information and / or responses to Plaintiff's billing inquiries thereby violating the Fair Credit Billing Act, hereafter sometimes referred to as the 'FCBA'.

6. The FCBA clearly states, in pertinent part, that, "....if a creditor, within sixty (60) days after having transmitted to an obligor a statement of the obligor's account in conncection with the extension of consumer credit, receives at the address

disclosed under section 127(b)(10)(15 USCS § 1637(b)(10) a written notice form the obligor one (1) sets forth or otherwise enables the creditor to identify the name and account number (if any) of the obligor, (2) indicated the oligor's belief that the statement contains a billing error....".

7.  Defendants have failed to validate the alleged, purported, fully disputed Note and / or mortgage and / or utterly reused to respond to Plaintiff's request for any validation or verification of the alleged, purported, fully disputed Note and / or mortgage and Plaintiff's other related accounting, servicing and billing inquiries, thus breaching the FCBA all to the detriment, damage and harm of the Plaintiff.

8.  Wherefore Plaintiff prays for judgment against defendants for an amount as yet not fully determined but which will exceed Three Hundred Thousand Dollars ($300,000.00 US) along with fees, costs, expenses and such other relief as may be just and equitable to Plaintiff.

## COUNT XXI - CONVERSION

1. Plaintiff restates and incorporates herein all of the other
paragraphs in this Complaint as if fully rewritten and stated
above verbatim, noting that many claims are being stated and
argued in the alternative and that Plaintiff expressly reserves
his right to present and argue alternative causes, actions and
theories of recovery.

2. Various defedants acted as servicers of the alleged, purported,
fully disputed Note and / or mortgage but clearly did not have
the authority to collect payments from Plaintiff or others,
which, said purported, alleged, fully disputed Note and / or
mortgage, which is not valid nor has ever been authenticated
at any time. Defendants did not have any servicing agreements
with the entity or purported entities claiming to be holding
the unauthentic, alleged, purported, fully disputed Note and
/ or mortgage.

3. Plaintiff was unaware, despite repeatedly requests for correction
and / or clarity that defendants actually created an account
for Plaintiff's spouse and continued to attempt to collect from
both Plaintiff and his spouse even though Plaintiff's spouse
was not, is not nor ever was party to the purported, alleged,
fully disputed Note.

4. Plaintiff and his spouse made in excess of One Hundred Seventy
Thousand Dollars ($170,000.00 US), of payments toward what clearly
now has been deemed to be an invalid, non-authentic Note and
/ or mortgage. Plaintiff with his spouse made the aforementioned
payments form a joint bank account owned both Plaintiff and
his spouse, having been pressured to do so.

5. In Michigan, conversion has both a common law and statutory
basis. Common law conversion- "consists of any distinct act
or domain exerted over another's personal property in denial
or inconsistent with the rights therein."

(See Department of Agriculture v. Appletree Marketing, L.L.C., 485 Mich. 1, 13-14, 779 N.W.2d 237, 244 (2010)(citation omitted). There are two forms of statutory conversion: (a) Another person's stealing or embezzling property or converting property tothe other person's own use; and (b) Another person's buying, receiving, possessing, concealing or aiding in the concealment of stolen, embezzled or converted property knew that the property was stolen, embezzled or converted. MCL 600.2919a.

6. Under Michigan law, a plaintiff may sue- "for the conversion of funds that were delivered for a speciifed purpose, but that the defendant diverted to his or her own use", which is clearly the case in the instant case. (see Tooling Manufacturing & Technologies v. Tyler, No. 293987, 2010 Michigan, App. LEXIS 2521, 2010 WL 5383529, at *11, Mich. App. December 28, 2010).

7. Through Plaintiff thorough review of the record chain of title, etc., none of the defendants that collected monies or demanded monies from the Plaintiff were authorized to do so because they lacked the legal authority and / or ownership to collect or request to attempt to collect from parties not subject to the alleged, purported, fully disputed Note and / or mortgage that is the partly the subject of this litigation. Defendants clearly converted these funds and attempted to collect in excess of Five Hundred Eighty-Nine Thousand Dollars ($589,000.00 US) form Plaintiff in addition to non-parties to this matter for "their own use".

8. Wherefore, on this Count, Plaintiff humbly prays for a judgment in the amount of Five Hundred Thousand Dollars US ($500,000.00 US) or more for converted funds, attorney fees, punitive damages, actual damages and any other allowable damages due Plaintiff in this matter.

### COUNT XXII - TRUTH IN LENDING ACT

1.  Plaintiff restates and incorporates herein all of the other
paragraphs in this Complaint as if fully rewritten herein and
stated above verbatim, noting that many claims are being stated
and argued in the alternative and that Plaintiff expressly reserves
his right to present and argue alternative causes, actions and
theories of recovery.

2.  The Truth In Lending Act (hereafter sometimes referred to
as the 'TILA') and Regulation Z, 12 C.F.R. §226.39 requires
that defendants notify Plaintiff of any "change in ownership
of their mortgage, etc...".

3.  Defendants have failed, refused and neglected to notify
Plaintiff of the change in ownership of the purported, alleged,
fully disputed Note and / or mortgage thus violating the Truth
In Lending Act and Regulation Z.

4.  15 U.S.C. §1641(g), the statutory parallel to Regulation
Z states that "in addition to other disclosures required by
this title, not later than thirty (30) days after the date of
which a mortgage loan is sold or otherwise transferred or assigned
to a third party, the creditor that is the new owner or assignee
of the debt shall notify the borrower in writing of such transfer
including- (A) the identity, address, telephone number of the
new creditor; (B) the date of the transfer; (C) how to reach
an agaet or party having authority to act on behalf of the new
creditor; (D) the location of the place where the transfer of
ownership of the debt is recorded; and, (E) any other relevant
information regarding the new creditor.

5.  Defendants have not complied with this statute in many regards.

6.  Defendants have hidden from Plaintiff any further factual
information to which the Plaintiff is entitled and which Plaintiff
has repeatedly requested.

7.  15 U.S.C. §1640(a) provides that any creditor who fails
to comply with any requirement under this chapter ... including
any requirement under ... subsection (f) or (g) of §131[15 U.S.C.
§1641] ... with respect to any person is liable to such person
for damages as are more fully enumerated in this statute.

8.  Given the obstruction and conspiracy which the defendants
have and continue to engage in, Plaintiff reserves opportunity
to supplement as necessary the details of these transactions
when they become known to Plaintiff during discovery.

9.  It is the defendants who did not and have not provided the
required information, which is in their exclusive possession
and which the Plaintiff has repeatedly requested from defendants.

10.  Wherefore Plaintiff requests that he be awarded actual,
compensatory, statutory, other and punitive damages for the
defendants' violations, breaches and acts as enumerated in this
Count in an amount as yet fully determined but which is expected
to exceed Five Hundred Thousand Dollars ($500,000.00 US).

## COUNT XXIII - WRONGFUL FORECLOSURE

1. Plaintiff restates and incorporates herein all of the other paragraphs in this Complaint as if fully rewritten and stated here verbatim, noting that many claims herein are being stated and argued in the alternative and that the Plaintiff expressly reserves his right to present and argue alternative causes, actions and theories of recovery.

2. Plaintiff further states that when a lender wishes to foreclose by adverstisment on a borrower's principal residence in Michigan, as is the case in the instant litigation, it must provide the borrower with a notice designating a person whom theborrower may contact to negotiate a loan modification and / or any other meaningful negotiable alternative to foreclosure, Michigan Compiled Laws § 600.3205(a)(1).

3. Plaintiff states that it is unclear to him whether or not the lender ever indicated such a person. Thus for want of knowledge, Plaintiff states that the lender may have failed in this requirement and thus violated Michigan Compiled Laws § 600.3205(a)(1).

4. Plaintiff has been provided with many names of various individuals and / or entities but none was specifically designated as a person to negotiate any meaningful modification and / or alternative method to foreclosure.

5. This leaves the Plaintiff guessing and attempting to cooperate with so many people, none of whom may actually have any authority nor who may fulfill the requirements of Michigan Compiled Laws § 600.3205(a)(1).

6. Plaintiff does not believe that he should have to guess as to whom if any person has actually been designated by the lender for purposes and compliance with MCL § 600.3205(a)(1).

7.  Plaintiff has affirmatively stated, given the ambiguous nature of the purported alleged lender, that at all times he has requested face-to-face negotiation within the prescribed time period from all possible persons who arguably could have been a designated person.  See MCL § 600.3205(b)(2).

8.  Plaintiff states that at all times he has fully cooperated, within his means and abilities, with all lender's persons and provided any requested documents available to him.  Thus Plaintiff has fully complied with MCL § 600.3205(b)(2).  Where no documents were requested, there was nothing for Plaintiff to comply with.  All requests were addressed by Plaintiff.  None of Plaintiff's requests were addressed by the Defendants.

9.  Plaintiff can only conclude that whatever negotiation(s) the lender may suggest occurred, any such negotiations failed.

10.  MCL § 600.3205 (c)(1) requires that, if negotiations fail, the designated person (although in the instant case there is no designated person) is still required to apply statutory calculations to determine whether or not the borrower qualifies for a loan modification or an alternative method to foreclosure.

11.  Plaintiff affirmatively states, based upon information and belief, that all possible lender named persons did not apply statutory calculation to determine whether or not the borrower qualified for a loan modification or alternative to foreclosure thus violating Michigan Compiled Laws § 600.3205(c)(1).

12.  Plaintiff states that he, the purported alleged borrower qualifies based upon the application of the statutory calculation(s).

13.  Plaintiff states that the ambiguous, multiple person(s) named by the multiple lenders in this case did not offer Plaintiff a modification or alternative to foreclosure.

14.  Plaintiff states that if a statutory loan modification had been offered, he believes that it would have been returned within fourteen days of receipt.  As no modification was offered, there was nothing to return by Plaintiff.

15.   Michigan law requires that if the borrower qualifies, as is the case when the Plaintiff in the instant case did qualify, the lender may not foreclose by advertisement unless the multiple person(s) offer the borrower a loan modification or alternative to foreclosure and the borrower fails or refuses to return such offer within fourteen days of his or her receipt of said offer, Michigan Compiled Laws § 600.3205(c)(6-7).

16.   The lender(s) made no offer to the borrower thus there was nothing to return.   Lender(s) did not perform as required by Michigan Compiled Laws § 600.3205 (c)(6-7).

17.   Where as in the instant action the lender(s) does not adhere to this provision, the law provides the borrower a cause of action to convert the foreclosure by advertisement to a judicial foreclosure, Michigan Compiled Laws § 600.3205(c)(8).

18.   Plaintiff asserts that consistent with his good faith conduct and the Defendant(s) failure to comply with the requirements of Michigan law, he hereby invokes and requests the Court to apply the provision of Michigan Compiled Laws § 600.3205(c)(8), et. seq. and, in addition to all other relief in equity or at law which may be appropriate, to convert any potential foreclosure to a judicial foreclosure with Plaintiff still asserting that the   the alleged, purported, fully disputed Note and / or Mortgage are not nor have been authenticated at any time to the present date.   Plaintiff reiterates his assertion that there is no Note and / or mortgage he is liable to because the defendant(s) have failed to in any way prove, authenticate or otherwise validate that there is any Note and / or mortgage. Plaintiff only brings this Count out of an abundance of caution knowing that the Court should and most probably agree with his assertions pursuant to the alleged, purported, fully disputed Note and / or mortgage.

Wherefore, Plaintiff demands the following relief, jointly and severally against the defendants along with costs, expenses, fees, punitive damages and interest at the statutory rate from the date of defendants' wrongdoing; along with all such other relief as this Honorable Court may deem just and equitable. Plaintiff humbly asks this Honorable Court to:

a. Declare the alleged, purported, fully disputed Note and / or mortgage null and void.

b. Deny defendants any status or claim to be a holder in due course of the alleged, purported, fully disputed Note and / or mortgage which is the subject of this Complaint.

c. Grant Plaintiff the maximum allowable statutory damages, including but not limited to treble damages, punitive damages, compensatory damages, actual damages and all such other damages as may be appropriate; all of which he seeks, under each applicable Count of this Complaint.

d. Issue orders precluding, enjoining or otherwise precluding defendants from filing any future foreclosure actions(s) on equitable grounds based on defendants conduct and that of any entity found to be its agent or its predecessor in interest or any other defendants who may be added to this or any amended action as may be necessary.

e. Grant Plaintiff the maximum actual damages under each claim where damages are sought or available.

f. Award Plaintiff punitive damages and / or other additional damages under each and every claim where such damages are available, awardable or appropriate.

g. Grant Plaintiff such other damages under each claim where such damages are available, including equitable relief, declaratory relief, injunctive relief and for disgorgement, expectation measured damages, cover damages and noneconomic damages including physical and emotional distress / duress.

h. Grand Plaintiff attorney's fees with the appropriate multiplier under each claim where such attorney's fees are available.

i. Grant Plaintiff costs and expenses under each claim including any additional statutory penalties to which the Plaintiff may be entitled.

j. Grant Plaintiff declaratory relief finding that Plaintiff is not liable to any defendant(s) for the alleged, purported, fully disputed Note and / or mortgage and that the aforementioned is thus void, and of nor force or effect to any party. Plaintiff requests that this Honorable Court issues appropriate orders to that effect.

k. This Honorable Court issues orders determining the rights, duties and obligations of the parties hereto, if any. Concurrently, that Plaintiff is the fee simple owner of his domicile and that the purported, alleged, fully disputed, unauthenticated and invalid Note and / or mortgage is deemed null and void and or otherwise of no force or effect.

l. This Honorable Court issue an injunction prohibiting the defendants and their agents from reporting any negative information as to the Plaintiff's credit or Plaintiff says, stop issuing negative information to the three major credit reporting agencies.

m. Grant Plaintiff additional damages as proven at the trial of this matter.

n. Award Plaintiff such other relief as may be just and equitable.

o. Plaintiff prays for a minimum of One Million United States Dollars ($1,000,000.00 US) on each and every Count of the Complaint as it relates to his own recoverable damages and such additional amounts as may be appropriate for each member of the Certified Class, that amount not yet determinable but expected and anticipated to far exceed One Hundred Million United States Dollars ($100,000,000.00 US).

## RESERVATION OF RIGHTS

Plaintiff reserves his right to amend his Complaint and

add additional parties as they become known.

## JURY DEMAND ENDORSED HEREON

Plaintiff hereby requests a trial by Jury in accordance
with the United States Constitution, the Civil Rules [FRCP 38]
and any local rules.

Respectfully Submitted,

Eric Paul Wendlandt,
Pro Se
6699 Avonlea Court SE
Grand Rapids, MI  49546
Plaintiff